Good morning, Your Honors. May it please the Court, Judith Seeds Miller for the petitioner. What I think this case boils down to is a question of equal protection. And the fact that I&N Section 101A.13b, which provides that someone who enters on an advanced parole under 212d.5 is not considered to have been admitted. The case from this Court that I believe is most instructive on this is Garcia-Quintero v. Gonzalez, 455 F. 3rd, 1006. And I'd like to acknowledge as a threshold matter that in that case the primary distinction is that the Court did not have to address 101A.13b and the provision that advanced parole is not an admission. And I think it's that distinction which violates the Equal Protection Clause. In that case, the Court found that people who are participants in the Family Unity Program had been admitted in any status for purposes of LPR cancellation of removal. And what the Court found significant was the regulation at 8 CFR 236.16, the travel provisions, the advanced parole provisions, which state that when a Family Unity participant leaves and returns using advanced parole, that person will be considered to have been inspected and admitted in the same immigration status as he had when he departed. But the question is, what is that status? What is the status of a Family Unity participant? And I believe it's almost identical. It is substantially similar to the status that Delia Maciel had. A Family Unity participant who meets the eligibility requirements, they entered before 1988, they're the spouse or child of somebody who adjusted through legalization, they haven't committed certain crimes, they haven't committed a certain number of any type of crime, will then be given a work permit, permission to stay here for two years, and the ability to request advanced parole. What Delia Maciel was given when she had to, and she had to meet eligibility requirements, too, she had to show that she was prima facie eligible to adjust status, which meant that she also hadn't committed certain types of crimes. And what did she get when she met that prima facie eligibility? The same thing, almost. She got a work permit. She got permission to seek advanced parole. She sought advanced parole. And when advanced parole was granted, rather than being given two years to stay here as someone under Family Unity, her advanced parole, which can be found in the record at page 474, provides that she could stay in the United States indefinitely, provided that she remained prima facie eligible for adjustment of status. In other words, that she didn't get into any trouble. Do we know why it took so long to adjust status? Because it took years. Your Honor, I completed a case this week where it took seven years for the I-130 to be approved. So it's just that sometimes the system ---- If the adjustment of status had been accomplished eight weeks earlier, she'd be a week on the good side. Fifty-four days. Fifty-four days is all that it's down to. But I don't see any reasonable distinction where these two groups who are substantially similarly situated, and they're not identical, but that's why the term is similarly situated and not identical. If they were identical, she'd be a member of the Family Unity program and I wouldn't be standing here today. But why these two groups are being treated differently, while they can leave and come back in in advanced parole and all of their time is counted. Isn't that really simply a congressional policy determination, just as they did for Cuban refugees? Well, Your Honor, I'd like to address that. Cuban refugees are adjusting status under the Cuban Refugee Act, which is a whole different program. Since people who left on their SAW cards, their legalization work permits in the 80s and reentered, they were legalizing under the Immigration Reform and Control Act. But the Family Unity members and Delia Maciel are both immigrating under the family-based second preference scheme. So I don't see any reasonable distinction to treat these two groups disparately when they are substantially similar. There is no logical basis to that. I know that in Garcia-Quintero, the Court also addressed that Family Unity beneficiaries are given the benefit that their entire time under the program is not counted toward the accumulation of unlawful presence. But I don't think that that's a meaningful distinction, because there are quite a variety of statuses that are not identical. Well, it's pretty clear that the IJ was quite sympathetic, viewing the actual period of presence in the United States, whether legally-denominated residents or otherwise. And at least I'm now kind of reading between the lines in response to what the IJ was doing. The IJ kind of pushed the envelope, and the BIA said, no, sorry, can't read the statutes that way. It's a matter of, you know, the long delay of adjustment of status and so on. Has this case been to mediation? It has not been to mediation, Your Honor. But there are quite a number of significant. She's lived here almost 25 years, has four U.S. citizen children. Her husband is a lawful permanent resident. She has no criminal history. But for the one, you know. Yes. Which actually has been treated only as an immigration violation, and no criminal charges were ever brought. Yeah. We see a few of these cases, and I have far from systemic knowledge of the practice, but it does appear that situations like this, where it's family members rather than commercial smuggling, they tend to attach just immigration consequences rather than criminal consequences. Yes. Blessedly so, Your Honor. I'm going to reserve the rest of my time, Your Honor. Jonathan Robbins here again for the respondent, Eric Holder. My colleague mentioned that she didn't see a distinction between her client and aliens who have been approved for status under the IJ. And I'm wondering if you could elaborate on that. My colleague, Eric Holder, has been a permanent resident under those different programs. And again, with respect to advanced parole, in this case there's no continuous residence or anything. This is particularly easy. The starting date for when you would consider the seven years of continuous physical presence would start when she was adjusted. And that's when she first was lawfully admitted in the United States. And based on the stop-time rule, she falls, I guess, 10 or 11 months short. It really is pretty much that simple. Are there any particular questions with regard to the difference or the dissimilar situation between the petitioner in this case and other aliens or anything like that? How does this case fit, if at all, under the Morton Memorandum? Well, the Morton Memorandum has to do with prosecutorial discretion. I would respectfully point out that DHS has sole discretion, exclusive jurisdiction with respect to issues of prosecutorial discretion. But again, this is an alien smuggling case. One of the criteria for prosecutorial discretion is not committing crimes like alien smuggling. So, I mean, I understand. I agree it is somewhat sympathetic. And again, even though in this particular case the smuggling of the aliens was, I think, done by nephews, there is no bar. There is a specific waiver for family members with respect to a son or a daughter, but not with respect to nephews. So that can't really apply here. In terms of legal stuff, she's falling just outside of several categories that would save her or at least allow her to be considered for. Pretty much, yes. Would the government object to mediation in this case? Well, I think it would be futile because what form of relief could we possibly meet in the middle on with respect to this? She's not going to get prosecutorial discretion because of the alien smuggling. I don't know what other form of relief there could possibly be. If it was a matter of discretion, then there might be something. But if she's not statutorily eligible for any type of relief, then I don't see where mediation would serve any purpose. That wasn't quite my question. Would the government object to mediation? No, I guess we wouldn't object, but again... It might not get anywhere. I understand that statement and you may be right. But if the court wants it, the court can certainly order mediation. We've not conferred on the question. We typically don't confer ahead of time. Okay. Are there any other particular questions with regard to this case? Which of your two arguments did you enjoy better? I actually kind of enjoyed the first one. Thank you very much for your time, Your Honors. Thank you. Your Honors, the government's basic argument in opposition to the Equal Protection is that the family is not similarly situated because the other people were admitted and she wasn't. But that's tautological. That's the reason we're here. Why isn't she considered admitted when someone under the Family Unity Program can enter illegally, what we call EWI, enter without inspection, be eligible to apply for advanced parole, never apply for advanced parole, so never have even had any type of legal entry, yet they're deemed to have been admitted from the day they were admitted into the Family Unity Program, and she is not. And I think that because of this, the application of 101-13A, I'm getting the number wrong, but is a violation of the Equal Protection Clause for those reasons. Okay. Let me ask you the same question. Would you object to mediation? Never. I would never object to mediation, Your Honor. Thank you. Thank you. Thank you. Thank you. Is there anybody here? Do we have counsel for the other side? Counsel David Koch? Maybe it's because I mispronounced the name of the case. I beg your pardon. The case is Neuchaska. I got it pretty close. Okay.
judges: Stein, Trott, Fletcher